**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CONSTANCE HILL,

     Plaintiff,

vs.                                                     Civ. No. 09-0009 JP/GBW

THE DOWNS AT ALBUQUERQUE, INC.

     Defendant.

## MEMORANDUM OPINION AND ORDER

On October 8, 2009, Defendant The Downs at Albuquerque, Inc. ("The Downs") filed Motion for Summary Judgment (Doc. No. 33) and Memorandum in Support of Motion for Summary Judgment (Doc. No. 34). In response, on November 2, 2009, Plaintiff Constance Hill filed Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 37). Then, on November 19, 2009, The Downs filed its Reply in Support of The Downs' Motion for Summary Judgment (Doc. No. 38). Having considered the parties' briefs and the applicable law, the Court finds that The Downs' Motion for Summary Judgment should be granted in part and denied in part.

### BACKGROUND

Plaintiff Constance Hill is an African American woman who began working as a security guard for The Downs in March 2006. (Mot. Summ. J., Ex. B.) The Downs' Director of Security, Mike Montoya, and The Downs' Human Resources Director, Tim Curtiss, participated in the initial hiring of Hill. (Curtiss Aff. ¶ 3, attached as Ex. A. to Mot. Summ. J.; Montoya Dep. 10:17-23, attached as Ex. D. to Mot. Summ. J.) Hill began her employment with The Downs as a security guard in the race track grandstand

1

and worked in that capacity until May 2006.  (Mot. Summ. J., Ex. B.)  Then, in early

May 2006, Hill's father passed away and Hill went to Florida, where her father had

lived, for approximately thirty-one days.  (Hill Dep. 23:12-22, attached as Ex. C to Mot.

Summ. J.)  When Hill returned from Florida, she learned that The Downs had

terminated her employment for failing to return from leave and not calling.  (Mot.

Summ. J., Ex. F.; Hill Dep. 25:13-16.)  While Hill disputes The Downs' assertion that she

did not call while she was in Florida, Hill acknowledges that The Downs had terminated

her employment by the time she returned to New Mexico.  (Hill Dep. 25:13 - 26:8.)

In early June 2006, The Downs Casino re-hired Hill for a temporary security

position in The Downs' casino, a position created specifically for Hill.  (Curtiss Aff. ¶ 4.)

That position ended on June 11, 2006 (Mot. Summ. J., Ex. G), but The Downs again re-

hired Hill later in June 2006 to a stand-by position working security in The Downs'

casino (Hill Dep. 27:16-21; Mot. Summ. J., Ex. I.)  The Downs informed Hill that her

typical shift would be from 5:00 p.m. to 1:00 a.m., but that her shift could change if The

Downs needed Hill to cover the shifts of absent employees.  (Mot. Summ. J., Ex. I.)

On September 28, 2006, because of ongoing issues in her personal life,[1] Hill

_____

[1] The Downs discusses these issues in considerable detail, which Hill contends is
designed only to place her in a bad light. The Court agrees.  Having reviewed the
briefing and carefully considered the legal issues involved, the Court cannot conceive of
any possible relevance for the inclusion of the information The Downs included
regarding Hill's personal life.  The inclusion of such details is gratuitous and does
nothing to advance The Downs' legal arguments or rebut any of Hill's claims. Counsel
often become privy to some of the most intimate details of a litigant's life during the
course of discovery, a virtually inevitable, and typically necessary, consequence of the
liberal discovery afforded by the Federal Rules of Civil Procedure.  It is therefore
incumbent upon counsel to use such information prudently and to avoid the temptation
that can arise in the heat of litigation to use that information solely to impugn the
character of an opposing party.

requested a schedule change to a more permanent and consistent shift.  (*Id.*)  Hill's

supervisor, Marcus Lujan, denied Hill's request for a shift change (*Id.*)  The parties'

recollections of what happened following Lujan's denial of Hill's request differ

significantly.  In short, The Downs maintains that Hill immediately spoke to Lujan's

superior, Mike Montoya, about her belief that Lujan denied Hill's request for a shift

change because of Hill's race.  Conversely, from what the Court can discern from Hill's

vague argument and the attached portions of her deposition, Hill maintains that she did

not raise such a concern until months later after making several more requests for a

schedule change.  The Court will discuss the significance of these differing accounts in

greater detail in Section II.B *infra*.  Eventually, though, Lujan removed Hill from stand-

by status and granted Hill's request for a permanent shift in March 2007.  (Curtis Aff.

¶ 5.)

       However, between December 2006 and May 2007, Hill was disciplined for a

variety of infractions.  On December 20, 2006, Hill received "written counseling" for

leaving her post during a shift.  (Mot. Summ. J., Ex. M.)  While Hill offers an

explanation of her reason for leaving her post, she does not dispute that she received a

corrective action form for the incident.  (Hill Dep. 43:9 - 45:10.)  Next, on February 2,

2007, The Downs suspended Hill for five days without pay after a parent brought an

infant into The Downs' casino while Hill was the guard on duty for the particular area in

which the parent entered.  (Mot. Summ. J., Ex. N; Hill Dep. 45:20 - 46:22.)  Once again,

Hill offers an explanation for why the incident occurred, but she does not dispute that

The Downs suspended her and provided her with written notification of that

suspension.  (*See id.*)  Then, on April 30, 2007, Hill received notice that The Downs had

placed her on a sixty day probationary period for leaving work early on five separate occasions.  (Mot. Summ. J., Ex. O.)  Hill admits that The Downs placed her on a sixty day probationary period, but she maintains that the decision to do so was in retaliation for her complaint about racial discrimination.

Finally, on May 9, 2007, Hill fell asleep during her lunch break and returned to her shift thirty minutes late.  (Mot. Summ. J., Ex. P; Hill Dep. 69:5-13.)  On May 11, 2007, Marcus Lujan prepared a corrective action form, with which Mike Montoya and Tim Curtiss agreed (Montoya Dep. 20:19 - 21:14; Curtiss Aff. ¶ 7), in which he recommended the termination of Hill's employment (Mot. Summ. J., Ex. P).  Lujan and Montoya presented the form to Hill on May 12, 2007 and informed her at that time of the termination of her employment.  (*Id.*; Hill Dep. 69:5 - 70:8.)  Like the other incidents, Hill admits to falling asleep on her lunch break and returning to her shift thirty minutes late, but she argues that Lujan's decision to recommend the termination of Hill's employment for that conduct was racially motivated and evinces Lujan's discriminatory treatment of Hill.

On November 14, 2007, Hill filed a complaint of retaliation and race and gender discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Mot. Summ. J., Ex. Q.)  The parties agree that the EEOC subsequently issued a notice of right to sue, ostensibly on May 29, 2008 (*See* Compl. ¶ 5, attached as Ex. A-4 to Doc. No. 1; Ans. ¶ 5, Doc. No. 3.)  On August 22, 2008, Hill filed, pro se, a Complaint for Discrimination in the Second Judicial District Court in Bernalillo County, New Mexico.  (Doc. No. 1, Ex. A-1.)  Then, on December 5, 2008, after retaining counsel, Hill filed Amended Complaint for Employment Discrimination on the Basis of Race and Sex and

Retaliation.  (*Id.*, Ex. A-4.)  On January 6, 2009. The Downs timely removed the case to this Court.  (Doc. No. 1.)  Finally, on July 15, 2009, Hill voluntarily dismissed her claim of gender discrimination against The Downs (Doc. No. 24), leaving only her claims of race discrimination and retaliation.  The Downs now moves for summary judgment on both claims.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, the Court examines "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (citation omitted). "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Id.* (citation omitted). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). "Unsupported conclusory allegations, however, do not create an issue of fact," *id.* (citation omitted); neither does "evidence, including testimony, . . . based on

---

[2] The Downs also moves for summary judgment on Hill's purported hostile work environment claim, arguing that "[t]o the extent that [Hill]'s Complaint can be read to allege a racially-hostile work environment, such a claim also fails as a matter of law." (Mot. Summ. J. at 18.)  Hill does not respond to this portion of The Downs' motion, and the Court, having closely reviewed Hill's Complaint, does not find that Hill has alleged a claim for hostile work environment.  Therefore, the Court need not address The Downs' arguments concerning this non-existent claim.

. . . mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted). Likewise, "the party opposing summary judgment may not rest on the averments or denials of its pleadings," but rather must go beyond the pleadings to show a genuine issue for trial. *Gonzales v. Millers Cas. Ins. Co. of Tex.*, 923 F.2d 1417, 1419 (10th Cir. 1991). However, "it is not [the Court's] province at the summary judgment stage to weigh evidence or make credibility determinations." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

## DISCUSSION

## I.   Hill's Title VII Claim for Race Discrimination

The Downs moves for summary judgment on Hill's claim for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").  In rather cursory fashion, The Downs contends that Hill cannot establish a prima facie case of race discrimination, arguing that Hill will only be able to show that she is a member of a protected class and reiterating Hill's numerous disciplinary infractions to show her purported lack of qualification to perform her job.  Alternatively, The Downs asserts that it has offered a legitimate, non-discriminatory reason for terminating Hill's employment, namely Hill's alleged ongoing job performance issues, and that Hill has not offered sufficient evidence to demonstrate that the Downs' articulated reason for terminating Hill's employment was pretextual.

Not surprisingly, Hill responds that she can establish a prima facie case of race discrimination.  Specifically, in addition to noting her membership in a protected class and her termination from The Downs, Hill asserts that The Downs terminated her under circumstances giving rise to an inference of discrimination and that she "has presented

evidence she was treated differently than others not in her protected class." (Resp. at 11.) Additionally, Hill argues that she "has presented sufficient evidence to create an inference that [The Downs'] proffered reason for terminating her was pretext," and points to alleged racist comments by her supervisor and a purported disparity in the way The Downs' supervisors disciplined Hill as compared to her non-African American co-workers.

### A.    Legal Standard Governing Title VII Race Discrimination Claims

Title VII provides in pertinent part that, "[i]t shall be an unlawful employment practice for an employer[,] (1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .." 42 U.S.C. § 2000e-2(a)(1).  "The inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff." *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).  A plaintiff may prove intentional discrimination through either direct or circumstantial evidence.  *Id.*

As the Tenth Circuit Court of Appeals has explained, "[d]irect evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Mitchell v. City of Wichita, Kan.*,  140 Fed. Appx. 767, 778 (10th Cir. 2005)(unpublished)(quoting *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999))(internal quotation marks and alterations omitted).  While plaintiffs often attempt to use alleged statements by supervisors as direct evidence of discrimination, the Court must be mindful that not all statements constitute direct evidence.  Instead, only "[s]tatements showing an existing policy which itself constitutes discrimination are

direct evidence of discrimination." *Mitchell*, 140 Fed. Appx. at 778 (quoting *Heim v. Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993))(internal quotation marks omitted). Accordingly, "[s]tatements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements." *Hall v. United States Dep't of Labor*, *Admin. Review Bd.*, 476 F.3d 847, 855 (10th Cir. 2007). "Thus, the court may consider statements reflecting personal opinions only when determining if there is circumstantial or indirect evidence of discrimination against the plaintiff." *Mitchell*, 140 Fed. Appx. at 778 (quoting *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000)).

When seeking to prove intentional discrimination through circumstantial evidence, a plaintiff must establish a prima facie case of discrimination under the burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, establishing a prima facie case of discrimination requires the plaintiff to show that "(1) [s]he was a member of a protected class; (2) [s]he was qualified and satisfactorily performing h[er] job; and (3) [s]he was terminated under circumstances giving rise to an inference of discrimination." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004); *see also Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (noting that an element of the prima facie case used in some Title VII cases, that the employee's position was not eliminated, is irrelevant in discriminatory discharge cases in which the employer does not state elimination of the position as the reason for the discharge). The plaintiff's burden in establishing a prima facie case is "not onerous." *Tex. Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981).[3]  Indeed, at this stage the plaintiff "is only required to

raise an inference of discrimination, not dispel the non-discriminatory reasons

subsequently proffered by the defendant."  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*,

222 F.3d 1184, 1193 (10th Cir. 2000).  Accordingly, "a plaintiff may make out a prima

facie case of discrimination in a discharge case by credible evidence that she continued

---

[3] Both parties have argued a prima facie standard different than the one the Court uses here.  While the difference between The Downs' proffered standard and the Court's is innocuous, the same cannot be said for the standard Hill proposes.  Specifically, the prima facie standard Hill articulates in her Response applies to discriminatory *suspension* cases and not to discriminatory discharge cases.  *Compare* Resp. at 11 *with Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002)("A plaintiff in a discriminatory suspension case *as distinguished from a discriminatory discharge case* makes out a prima facie case upon showing: (1) that plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.")(emphasis added).  Hill makes clear that the adverse employment action about which she complains is The Downs' termination of her employment. (Resp. at 11 - "Plaintiff suffered an adverse employment action, termination.")  Thus, because the standard Hill proposes is not applicable to the kind of claim she advances, the Court rejects Hill's proposed standard in favor of the one the Court has articulated above.

Likewise, the Court notes that the standard The Downs uses from *Swackhammer*, 493 F.3d 1160 (10th Cir. 2007) derives from the Tenth Circuit's summary of the district court proceedings in that case and does not reflect the Tenth Circuit's formal articulation of a definitive prima facie standard. Indeed, both the Tenth Circuit and the United States Supreme Court have made clear that the *McDonnell Douglas* framework is not an inflexible standard.  *See Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002)(citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575 (1978)).  Thus, the articulation of the elements may vary depending on the facts of a given case.  *See id.*  However, despite varying articulations of the standard, the central question in each case remains the same: has the plaintiff presented evidence of an adverse employment action under circumstances giving rise to an inference of discrimination?  *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

Because the Court finds that the prima facie standard it has articulated most accurately captures the issues in this case, the Court will conduct its analysis under that framework.  However, conducting this analysis under a slightly different standard than The Downs has articulated will be of little consequence, as The Downs has focused its arguments against Hill's prima facie case on the issue of her qualification for the position, which is also an element of the standard the Court will use.

to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time." *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991); *see also Smith v. Oklahoma ex rel. Tulsa County Dist. Att'y*, 245 Fed. Appx. 807, 812 (10th Cir. 2007)(unpublished)(holding that plaintiff's testimony that she was treated differently than male co-workers was sufficient to establish the third element of her prima facie case concerning termination under circumstances giving rise to an inference of discrimination).

"If the plaintiff establishes a prima facie case, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the defendant carries its burden of production, the presumption of discrimination drops out of the case. The burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination." *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005)(internal citations omitted). "A plaintiff demonstrates pretext by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1308 (internal citations and quotation marks omitted).

**B.    Hill's Title VII Claim**

**1.    Direct Evidence of Discrimination**

Turning now to Hill's claim, the Court must initially address whether Hill has presented direct evidence of discrimination.  The Court notes that Hill repeatedly asserts, albeit not in the context of arguing her prima facie case, that "[her] supervisor on numerous occasions and in front of different witnesses made racist comments about Blacks."  (Resp. at 12, 13, 15.)  In support of this assertion, Hill cites to deposition testimony by two former co-workers who claim that they witnessed Hill's supervisor, Marcus Lujan, make discriminatory statements about African Americans and homosexuals, both allegedly in reference to Hill. (Resp., Ex. B, Garcia Dep. 47:16-17, claiming that he heard Lujan state, "I don't like Black people and I don't like gay people."; Resp., Ex. C, Martinez Dep., claiming that she heard Lujan state in reference to Hill, "I can't stand that little black girl," *id.* at 32:2, and "I am sick of this gay shit and black people thinking that they can do what they want to do," *id.* at 34:21-23.)[4]  Neither Hill nor the witnesses whose testimony she cites allege that Hill was present when Lujan allegedly made those statements or that Lujan made those statements in connection with his decision to terminate Hill's employment.  Moreover, neither Hill nor the witnesses allege that Lujan's alleged statements described any policy of The Downs that could be used as direct evidence of discrimination.  Accordingly, the Court construes Lujan's alleged statements as expressions of personal opinion that, if made, evince

---

[4] As The Downs correctly notes, Hill has not alleged discrimination based on sexual orientation, (*see generally* Compl., attached as Ex. A-4 to Doc. No. 1), and the Court, therefore, will not consider any alleged comments concerning homosexuals in its analysis of Hill's claims.

personal prejudices but are not properly considered as direct evidence of discrimination. *Mitchell*, 140 Fed. Appx. at 778.

## 2. Circumstantial Evidence of Discrimination

As Hill has not offered any direct evidence of discrimination, the inquiry now turns to whether she has met her burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework. The Downs acknowledges that Hill, as an African-American, is a member of a protected class and can thus establish the first element of her prima facie case. (*See* Mot. Summ. J. at 11.) However, The Downs asserts that Hill cannot establish any of the other elements of her prima facie case. The Court does not entirely agree.

With respect to the second element of Hill's prima facie case — whether she was qualified for her job and performing it satisfactorily[5] — Hill completely neglects to address this element in her Response and does not offer any evidence that could conceivably relate to this element in addressing the other elements of her prima facie case. While a plaintiff's burden in establishing a prima facie case is "not onerous," *Burdine*, 450 U.S. at 253, Hill has failed to meet even that minimal burden with respect

---

[5] The Court notes that The Downs conflates the principles of qualification and satisfactory performance in its argument. Specifically, The Downs cites to alleged performance deficiencies in support of its argument that Hill lacked the basic qualifications for the job, an argument belied by *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 222 F.3d 1184 (10th Cir. 2000), the case to which The Downs cites as support for its arguments. *See also Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992)(holding that "the employer's reasons for the adverse action are not appropriately brought as a challenge to the sufficiency of the plaintiff's prima facie case."). While this confusion is inconsequential given Hill's complete failure to offer any evidence in support of this element of her claim, the Court suggests that counsel revisit the Tenth Circuit's discussion in *Horizon/CMS Healthcare Corp.*

to this element.  Curiously, despite The Downs focusing its entire argument against Hill's prima facie case on her purported lack of qualification, Hill never responds to or even acknowledges those arguments.  Instead, Hill relies on a canned argument that she uses throughout her Response to oppose The Downs' general assertion that Hill lacks evidence to establish a prima facie case.  Although a plaintiff is not required to present evidence sufficient to dispel the employer's proffered non-discriminatory reasons for the termination at the prima facie stage, a plaintiff must present at least *some* evidence to support the basic elements of the prima facie case, something Hill has not done with respect to this second element.

While Hill's failure to present any evidence to support the second element of her prima facie case is ultimately fatal to her claim, the Court notes that had Hill been able to carry her burden with respect to that element, she could have established a prima facie case, as she has presented sufficient evidence to establish the third element of her prima facie case — that the termination of her employment arose under circumstances giving rise to an inference of discrimination.  Specifically, Hill has presented evidence that The Downs did not terminate the employment of other non-African American employees caught sleeping on the job while The Downs terminated Hill's employment when she reported back to work thirty minutes late after falling asleep on her lunch break.  (*See* Resp., Ex. A, Hill Dep. 69:5-17; Ex. B, Garcia Dep. 53:1-25, 54:1-9; Ex. C, Martinez Dep. 48:22-25, 49:1-13.)[6]  This evidence coupled with the evidence that Hill's

---

[6] The Court notes that the deposition testimony of Garcia and Martinez references affidavits apparently prepared by both witnesses that are not part of the Court's record.

supervisor, Marcus Lujan, allegedly made discriminatory statements about African
Americans (*see* Resp., Ex. B, Garcia Dep. 47:16-17;  Resp., Ex. C, Martinez Dep. 32:2,
34:21-23) is sufficient to raise at least an inference of discrimination in the termination
of Hill's employment.

That Hill has set forth sufficient evidence to raise an inference of discrimination
in the termination of her employment is ultimately inconsequential though, given that
she has failed to produce sufficient evidence to satisfy each of the elements of her prima
facie case.  Accordingly, because Hill has failed to carry her burden of establishing a
prima facie case, the Court finds that The Downs' motion should be granted with respect
to Hill's claim under Title VII.  However, the Court notes that even if Hill had
established a prima facie case of discriminatory discharge, her claim ultimately would
fail as a matter of law, as discussed below.

### 3.    Legitimate, Non-Discriminatory Reason for the Termination of Employment

Assuming Hill had been able to establish a prima facie case, the burden would
then shift to The Downs "to articulate a legitimate, non-discriminatory reason for the
termination of [Hill's employment] that is not facially prohibited by Title VII."
*Salguero,* 366 F.3d at 1175 (internal citation and quotation marks omitted).  The Downs
easily meets this burden by articulating a host of job performance issues that eventually
led to the termination of Hill's employment in accordance with The Downs' progressive
discipline system.  Specifically, The Downs states that:

> [Hill], before being terminated, . . . received a written warning on
> December 20, 2006 for leaving her post [Mot. Summ. J., Ex. M] . . . .  On
> February 2, 2007, [Hill] was suspended for five (5) days without pay after
> she allowed an infant into The Downs' Casino [Mot. Summ. J., Ex. N]. . . .

14

> This violation was of such a serious nature that it was a reason for a
> $20,000 fine being assessed against The Downs. [Mot. Summ. J., Ex. A
> ¶ 6.] On April 30, 2007, [Hill] was placed on 60 days' probation, and given
> a final written warning, after she left work early on five occasions. [Mot.
> Summ. J., Ex. O.]   On May 11, 2007, within her 60-day probation. [Hill]
> did not report to work after lunch because she admitted she had fallen
> asleep.  She was terminated at that point. [Mot. Summ. J., Ex. P.]

(Mot. Summ. J. at 12-13.)  As firing an employee for a history of performance

deficiencies is not facially prohibited by Title VII, the Court finds that The Downs has

met its burden of articulating a legitimate, non-discriminatory reason for its decision to

terminate Hill's employment.  Accordingly, the burden would now shift to Hill to

establish by a preponderance of the evidence that The Downs' stated reason for

terminating her employment was pretextual.  *Jaramillo*, 427 F.3d at 1307.

### 4.    Pretext

For Hill to show that The Downs' proffered race-neutral reason was a pretext for

discrimination, Hill must demonstrate that the reason "w[as] so incoherent, weak,

inconsistent, or contradictory that a rational factfinder could conclude the reason[]

w[as] unworthy of belief." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th

Cir. 2006).   In appropriate circumstances, a trier of fact can reasonably infer from the

falsity of the explanation that the employer is "dissembling to cover up a discriminatory

purpose." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147

(2000)).  And, "a plaintiff's prima facie case combined with *sufficient evidence* of falsity,

*may permit* a trier of fact to conclude that the  employer discriminated." *Young*, 468

F.3d at 1250 (emphasis in original). The nature and quantum of proof is key because

evidence about the falsity of an employer's proffered reason will not *always* be adequate

to sustain liability." *Id.* (emphasis in original).  The factfinder must be able to conclude,

based on a preponderance of the evidence, that *discrimination was the determinative factor* in the employer's actions – simply disbelieving the employer is insufficient." *Id.* (emphasis in original). The relevant inquiry as to the proffered reasons "is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver,* 365 F.3d 912, 924-25 (10th Cir. 2004) (quotation and alterations omitted).  "Evidence of pretext may . . . take a variety of . . . forms," but "defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive." *Swackhammer*, 493 F.3d at 1168.

### a.    Same Actor Inference

Before reaching the substance of the pretext analysis, however, the Court must address the threshold issue of whether The Downs is entitled to the same actor inference announced by the Tenth Circuit in *San Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006).  In *San Antonio*, the Tenth Circuit joined all of the other Circuit Courts of Appeals in holding that "in cases where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* (internal citations and quotation marks omitted).  Although the court in *San Antonio* did not officially decide what constitutes a "relatively short time span," it applied the inference to a ten month time span and noted that other circuits have applied the inference to a broad range of time periods, ranging from as short as eight days to as long as four years. *Id.*, 458 F.3d at 1183 and n. 4.  The Tenth Circuit stressed that the same actor inference is just that, an inference, and should not be construed as a presumption against pretext.

*Id.*, 458 F.3d at 1183.  Accordingly, where the inference applies, the employee still has an opportunity to "present countervailing evidence of pretext."  *Id.*

Hill contends that the same actor inference does not apply here, but her argument in this regard reflects a misapprehension of the applicable legal standard. According to Hill, the same actor inference should not apply because she has offered evidence of pretext.  However, it is clear from the Tenth Circuit's articulation of the standard in *San Antonio* that presenting evidence of pretext does not negate the applicability of the inference; rather, the purpose of presenting such evidence is to rebut the inference.  *See id.*   The Court will address the sufficiency of that evidence below, but for purposes of determining whether the same actor inference applies, the Court finds that Hill has not raised any viable argument against applying the inference here, and the undisputed material facts fully support its application.  Specifically, it is undisputed that Marcus Lujan, with the consultation of Mike Montoya, The Downs' Director of Security, was responsible for hiring Hill twice in June 2006, once for a temporary position created specifically for Hill, and later that month to a more permanent position. Likewise, Hill does not dispute that Lujan and Montoya presented Hill with a notice of termination on May 12, 2007.  Hence, the undisputed facts present a scenario that fits squarely within the scope of the Tenth Circuit's articulation of the same actor inference.

The Court will therefore consider Hill's evidence of pretext in light of this inference and the general legal standard governing claims of pretextual termination.

### b.    Hill's Evidence of Pretext

The strongest, albeit the only, evidence of pretext Hill has presented is deposition testimony concerning Marcus Lujan's allegedly discriminatory  remarks (*see* Resp., Ex.

B, Garcia Dep. 47:16-17;  Resp., Ex. C, Martinez Dep. 32:2, 34:21-23) and The Downs'

purportedly disparate and discriminatory disciplinary practices (*see* Resp., Ex. A, Hill

Dep. 69:5-17; Ex. B, Garcia Dep. 53:1-25, 54:1-9; Ex. C, Martinez Dep. 48:22-25, 49:1-

13).  Notably, this evidence is the same as that which Hill presented to establish her

prima facie case.  While this evidence may have been sufficient to raise an inference of

discrimination at the prima facie stage, it falls woefully short of establishing by a

preponderance of the evidence that discrimination was the determinative factor in The

Downs' decision to terminate Hill's employment.

 With respect to Lujan's alleged discriminatory remarks, viewing the facts in the

light most favorable to Hill, the Court will proceed as though Lujan actually made those

remarks and conduct its analysis accordingly.  On their face, the statements

undoubtedly reflect a personal prejudice, but whether the plain language of a particular

statement evinces personal prejudice is not the test.  Instead, the analysis is more

encompassing, taking into account the timing and context of the statements to

determine whether the discriminatory thinking behind such statements infected the

employer's decision making process.  *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d

526, 531 (10th Cir. 1994)(requiring a nexus between alleged discriminatory comments

and the decision to terminate an employee's employment); *see also Bittel v. Pfizer, Inc.*,

307 Fed. Appx. 132, 140-41 (10th Cir. 2009)(Table)(finding that a discriminatory

statement made directly to an employee by a person involved in determining the

employee's employment status more than one year before firing the employee was too

attenuated to establish a nexus between the comment and the decision to fire the

employee); *Voltz v. Coca-Cola Enters. Inc.*, 91 Fed. Appx. 63, 71-72 (10th Cir.

18

2004)(Table)(finding employer's comments about employee's protected class outside of the challenged employment decision insufficient to demonstrate a nexus between the comment and the employment action).  It is undisputed that Hill was never present when Lujan allegedly made the discriminatory comments, and, importantly, Hill does not allege that Lujan made the comments in the course of disciplining Hill or terminating her employment.  Additionally, it is undisputed that Debbie Martinez, one of Hill's co-workers who allegedly heard Lujan make discriminatory comments, worked for The Downs from March 8, 2006 through June 16, 2006 and from September 1, 2006 through September 24, 2006.  (Martinez Dep. 8:22 - 11:25.)  Accordingly, the latest date on which Martinez could have heard Lujan make discriminatory comments would have been September 24, 2006, over seven months before the termination of Hill's employment  (*See* Mot. Summ. J., Ex. P)  — a time period far too attenuated for any rational factfinder to discern a nexus between the alleged comments and the decision to terminate Hill's employment.

While it is clear that Steven Garcia, the other of Hill's co-workers who allegedly heard Lujan's comments, worked at The Downs for the entirety of Hill's employment (*see* Garcia Dep. 30:11-13), the record is devoid of any evidence indicating when Garcia allegedly heard Lujan's comments.  Although the Court will view the facts in the light most favorable to Hill in deciding a motion for summary judgment, the Court will not delve into unsubstantiated speculation to create facts where there are none.  Thus, Garcia's testimony only lends support to the conclusion that Lujan allegedly made discriminatory comments, which, standing alone, is insufficient to lead a reasonable factfinder to conclude by a preponderance of the evidence that racial animus was the

determinative factor in The Downs' decision to terminate Hill's employment.

Likewise, the evidence Hill offers regarding The Downs' allegedly discriminatory disciplinary practices is of little value in demonstrating pretext. To support her argument in this regard, Hill relies exclusively on her own deposition testimony and that of Steven Garcia and Debbie Martinez. Hill's argument finds support in only one area of that proffered testimony. Specifically, Garcia's testimony tends to establish that Lujan caught Garcia sleeping on the job and did not discipline Garcia (Garcia Dep. 53:1-25, 54:1-9), and The Downs has not supplied evidence to the contrary. It is important to note that, unlike the other testimony on which Hill relies, Garcia's testimony is based on personal knowledge and not on speculation about how The Downs disciplined other employees. However, Garcia's testimony supports Hill's argument only to a limited extent. While Hill has repeatedly emphasized that The Downs terminated her employment for falling asleep during her lunch break and returning to work late, the form delineating the reasons for The Downs' decision to terminate Hill's employment indicates that the basis for that decision was Hill's late return and not her decision to sleep during her break. (Mot. Summ. J., Ex. P.) Thus, the analogy between Garcia's and Hill's situations is tenuous at best.

However, in the directly analogous situation of discipline related to attendance issues, Garcia's testimony tends to bolster The Downs' argument that it did not discipline Hill differently than other employees. Specifically, Garcia acknowledges that, like Hill, The Downs disciplined him for attendance issues (Garcia Dep. 57:8-12), and The Downs provides four different "corrective action" forms as evidence of that discipline (Garcia Dep. Exs. 5, 6, 9, 10). While Hill offers her own deposition testimony

20

and that of Debbie Martinez to support a general claim that The Downs disciplined Hill differently than other employees, the testimony she offers provides nothing more than Hill's and Martinez's respective speculation on the disciplinary action The Downs took to address other employees' infractions, and is therefore not properly considered in opposing summary judgment.  (*See* Hill Dep. 64:6-25, 65:1-25, 66:1-17, 68:7-25, 69:1-2; Martinez Dep. 48:22-25, 49:1-13.)  Remarkably, Hill offers no documentary support for her claim that she was disciplined differently than other employees, and thus is forced to rest her argument on speculation and testimony that in fact contradicts her position. Hence, Hill has failed to present sufficient evidence to lead any rational factfinder to discern pretext in The Downs' actions.

In short, the paucity of evidence Hill has presented to support her claim for pretext fails to create a genuine issue of material fact that The Downs' legitimate, non-discriminatory reason for terminating Hill's employment was pretextual.  Accordingly, the Court finds that The Downs' motion for summary judgment should be granted with respect to Hill's claim under Title VII.

## II.     Hill's Claim of Retaliation

Next, The Downs moves for summary judgment on Hill's claim that unspecified supervisors at The Downs retaliated against Hill for complaining about perceived racial discrimination.  The Downs contends that Hill cannot establish a prima facie case of retaliation because her alleged complaint to a superior concerning racial prejudice did not qualify as protected activity under Title VII.  Additionally, The Downs asserts that even if Hill can establish she engaged in protected activity, she lacks evidence to establish a causal connection between the termination of her employment and that

21

protected activity.  Furthermore, The Downs argues that the eventual termination of Hill's employment was the result of the "continuation of a corrective action process," which The Downs seemingly contends does not support Hill's claim of a retaliatory motive behind The Down's decision to fire Hill.

In response, Hill argues that she has presented sufficient evidence to satisfy each element of her prima facie case.  Specifically, Hill claims that the evidence concerning her complaint to a superior regarding racial discrimination coupled with the evidence that she received a sixty day probation within a month of complaining and had her employment terminated weeks later all serve to establish the first two elements of her prima facie case.  Additionally, Hill contends that the evidence she has presented concerning the close temporal proximity of her complaint to a superior and the disciplinary action against her and eventual termination of her employment is sufficient to establish the causal connection element of her prima facie case.  Finally, Hill reiterates, verbatim, her earlier argument regarding pretext and asserts that the evidence of pretext "establishes a [sic] inference of retaliation."  (Resp. at 15.)

### A.    Legal Standard Governing Title VII Retaliation Claims

Under 42 U.S.C. § 2000e-3(a) of Title VII, employers are prohibited from discriminating against any employee for opposing any employment activity made unlawful by the other provisions of Title VII.  As with other claims for discrimination under Title VII, a plaintiff may prove a claim of retaliation with either direct or circumstantial evidence.  *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1136 (10th Cir. 2005).  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Mitchell v. City of Wichita, Kan.*,  140

Fed. Appx. 767, 778 (10th Cir. 2005)(unpublished)(quoting *Shorter v. ICG Holdings,*

*Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999))(internal quotation marks and alterations

omitted).  Thus, in the context of a claim of retaliation, direct evidence is evidence

"directly showing that retaliatory animus played a motivating part in the employment

decision."  *Kosan v. Utah Dep't of Corrs.*, 290 Fed. Appx. 145, 148 (10th Cir.

2008)(unpublished)(quoting Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1224 (10th Cir.

2008)(internal quotation marks and alterations omitted).  However, "[r]etaliatory

discharge cases must generally be proven by circumstantial rather than direct evidence

because rarely will an employer admit to having discharged an employee in retaliation

for exercising a right."  *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002).

     Like claims of racial discrimination under Title VII, a plaintiff seeking to prove

retaliation through circumstantial evidence is subject to the burden-shifting analysis of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.  As the Tenth

Circuit Court of Appeals has explained:

> Under that framework, a plaintiff must begin by putting on a prima facie
> case of retaliation. The prima facie case encompasses three elements.
> First, plaintiff must show that she engaged in protected opposition to
> discrimination. This type of activity can range from filing formal charges
> to complaining informally to supervisors. Under the second prong of the
> prima facie case, a plaintiff must demonstrate that her employer took an
> adverse employment action against her subsequent to or after the
> protected activity. The existence of an adverse employment action is
> determined on a case-to-case basis and does not include a mere
> inconvenience or an alteration of job responsibilities. Instead, to
> constitute an adverse action, the employer's conduct must be materially
> adverse to the employee's job status. For example, conduct that effects a
> significant change in employment status, such as hiring, firing, failing to
> promote, reassignment with significantly different responsibilities, or a
> decision causing a significant change in benefits will be deemed an adverse
> employment action. Finally, under the third prong of the prima facie case,
> the plaintiff must establish a causal connection between the protected

activity and the adverse action.

*Medina,* 413 F.3d at 1136-37 (internal citations and quotation marks omitted).

"If the plaintiff establishes her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. Thereafter, if the defendant meets its burden, summary judgment against the plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether the defendant's reason is pretextual. The plaintiff meets her burden here if she demonstrates such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered reason such that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 1137.

### B.   Hill's Retaliation Claim

As Hill has not presented any direct evidence of retaliation, the Court will analyze her claim in accordance with the *McDonnell Douglas* burden-shifting analysis.

With respect to the first element of Hill's prima facie case — whether she engaged in protected activity under Title VII — the Court must decide whether Hill's informal complaint to a superior constitutes such activity.  Initially, it is important to note that the parties do not dispute that Hill complained to The Downs' Director of Security, Mike Montoya, regarding perceived racial discrimination in Marcus Lujan's scheduling decisions related to Hill. (*See* Lujan Dep. 13:24-25, 14:1-20; Hill Dep. 55:5-25, 56:1-3.) While The Downs contends that such an informal complaint does not constitute protected activity under Title VII, that argument is contrary to established Tenth Circuit law.  Specifically, as noted above, the Tenth Circuit has held that "[protected] activity can range from filing formal charges to complaining informally to supervisors."

24

*Medina*, 413 F.3d at 1136. Thus, based on the undisputed facts, Hill has presented sufficient evidence to establish the first element of her prima facie case.

As to the second element of Hill's prima facie case — whether The Downs took an adverse employment action against her after she engaged in protected activity under Title VII — Hill can easily establish this element. The Downs acknowledges that it took adverse employment actions against Hill by eventually terminating her employment on May 12, 2007, although it disputes that its adverse employment action followed any protected activity by Hill. However, in light of the Court's holding here, that latter argument is without merit, and the Court finds that Hill has met her burden with respect to this second element.

Finally, with respect to the third element of Hill's prima facie case — whether a causal connection exists between Hill engaging in protected activity and The Downs' decision to discipline Hill and eventually terminate her employment — the parties have presented such drastically different accounts of the timing of Hill's complaints that resolution of this issue on summary judgment is not appropriate. Specifically, while The Downs consistently maintains that Hill complained to Mike Montoya in September 2006, the deposition testimony to which The Downs cites does not support that proposition, and, in fact, provides no reference regarding the timing of Hill's complaint. (*See* Lujan Dep. 13:24-25, 14:1-20.) Conversely, although she does not specifically articulate the timing in her Response, Hill offers evidence that she complained to Montoya some time between February 2007 and March 2007. (*See* Hill Dep. 52:20-25, 53:1-25, 54:1-25, 55:1-25, 56:1-7.) This factual dispute is particularly significant because the Tenth Circuit has emphasized the importance of considering the temporal proximity

25

between an employee's protected activity and an employer's adverse employment action when determining the existence of a causal connection between the two. *See, e.g., Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008)(noting that "to be sure, we may infer retaliatory motive from a close temporal proximity between an employee's protected conduct and an employer's adverse employment action. But unless the termination is very close in time indeed to the protected activity, we have held that a plaintiff cannot rely on temporal proximity alone and must come forward with additional evidence to establish causation. More specifically, we have held that a one-and-a-half-month period may suffice to establish causation on a prima facie basis, but a three-month period, standing alone, will not suffice." (internal citations and quotation marks omitted)).  Thus, if a jury here accepts Hill's time frame for her complaint and eventual termination, such evidence could be enough on its own to establish the causal connection element of her prima facie case.  However, if the jury accepts The Downs' time frame, Hill would certainly be required to present additional evidence to establish this element.  Accordingly, the Court finds that a genuine dispute of material fact exists on this issue that precludes summary judgment.[7]

## CONCLUSION

Hill has failed to set forth sufficient evidence to establish each element of her prima facie case for race discrimination under Title VII.  However, even if she had been able to establish a prima facie case, The Downs has articulated a legitimate, non-

---

[7] Remarkably, The Downs did not argue the remainder of the *McDonnell Douglas* analysis beyond the prima facie case, with the exception of a passing reference to Hill's pretext argument.  Accordingly, the Court will not address the other factors in that analysis since the parties have not done so.

discriminatory reason for terminating Hill's employment, and Hill has not shown by a preponderance of the evidence that The Downs' articulated reason is pretextual. However, a material factual dispute exists concerning the timing of Hill's complaint to her superior regarding perceived racial discrimination in disciplinary and scheduling decisions made concerning Hill, which precludes summary judgment on Hill's claim of retaliation.

**IT IS THEREFORE ORDERED THAT:**

1)  The Downs' Motion for Summary Judgment (Doc. No. 33) is GRANTED as to Hill's claim for race discrimination under Title VII; and

2)  The Downs' Motion for Summary Judgment (Doc. No. 33) is DENIED with respect to Hill's claim for retaliation.

_____

SENIOR UNITED STATES DISTRICT JUDGE